UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GEORGIA M. BROWN

                      Plaintiff,                 Case No. 16-cv-10618
v.                                             Honorable David M. Lawson
                                                     Magistrate Judge David R. Grand

UNITED HEALTH GROUP –
OPTUM DIVISION,

                      Defendant.
_____/

## REPORT AND RECOMMENDATION TO GRANT DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [49]

This is an employment discrimination case. In her complaint, Plaintiff Georgia Mae Brown ("Brown"), a former Clinical Service Manager ("CSM") at Defendant United Health Group – Optum Division ("Optum") in Detroit, alleges she was constructively discharged because of her race and in retaliation for complaints she voiced, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000 *et seq.* ("Title VII"). (Doc. #1 at 2, 11; Doc. #51 at 6).[1] Now pending before the Court is Optum's Motion for Summary Judgment (Doc. #49).

---

[1] Brown's complaint also contains a singular brief reference to Michigan's Elliot-Larsen Civil Rights Act, M.C.L. § 37.2101 *et seq.* (the "ELCRA"), and asserts that Optum's conduct constituted "[d]efamation of [her] professional character, libel and slander." (Doc. #1 at 2). Brown has expressly agreed to dismiss her defamation-related claims (Doc. #51 at 64), and it appears she is not interested in pursuing a claim under the ELCRA (*id.* at 13) (Brown stating that she "filed this lawsuit alleging race discrimination and retaliation in violation of Title VII [] as well as defamation."). At any rate, because it is recommended herein that Brown's federal claims be dismissed, the Court should decline to exercise supplemental jurisdiction over any remaining state law claims. *Brown v. Cassens Transport Co.*, 546 F.3d 347, 363 (6th Cir. 2008) (noting that a federal court should typically decline to exercise pendent jurisdiction over a plaintiff's state-law claims after dismissing the federal claims); *Nali v. Angelo*, 10-cv-11363, 2011 WL 824596, at *3 (E.D. Mich. Mar. 3, 2011).

1

## I. RECOMMENDATION

For the reasons set forth below, IT IS RECOMMENDED that Optum's Motion for Summary Judgment (Doc. #49) be GRANTED.

## II. REPORT

### A. Factual Background

Optum hired Brown on August 25, 2013, as a CSM with an annual salary of $121,000. (Doc. #51 at 15). Brown was one of two CSMs for the Detroit area. Sherry McDonald ("McDonald"), the other CSM, is a white woman. (*Id.* at 18, 20). Both Brown and McDonald reported to Sherrie McNutt ("McNutt"), the Director of Clinical Operations. (*Id.* at 20). McNutt, in turn, reported to Darlene Flaig ("Flaig"), the Senior Clinical Director of National Accounts and Bundled Payments. (*Id.* at 21-22). During the relevant time period, Andrew Felrice ("Felrice") was Optum's Vice-President. (*Id.* at 21-22).

Just before beginning her employment at Optum, Brown was an adjunct faculty teacher for nursing and health science at the University of Phoenix. (*Id.* at 16). Prior to that, Brown was a nurse admissions coordinator at St. John Providence Hospital. And, before that, Brown had been terminated from her position as an Administrative Director of Clinical Resources Management at Detroit Medical Center ("DMC"). (*Id.*). Indeed, Brown admits that while at DMC, she had been placed on a Performance Improvement Plan and was eventually terminated. (*Id.* at 17). While Brown "disputes that her alleged and unsubstantiated failure to resolve those performance areas identified in the Plan or issues with her performance generally was the reason she was terminated," she admits that in her application to Optum, she stated that "the reason she left DMC was a 'change in leadership to Dr. Patricia Uddyback,'" and that this assertion was

"perhaps not entirely true" because she was, in fact, terminated. (*Id.*).[2] Optum hired Brown based on her application and an interview, without calling DMC regarding her prior job performance. (*Id.*).

For purposes of the instant motion, it largely suffices to say that after a positive start to her employment (*id.* at 18-19), the relationship between Brown and Optum, and particularly between Brown and her colleagues Flaig and McNutt, soured. (*Id.* at 20-21). There were alleged complaints by McNutt to Flaig about Brown's leadership (*id.* at 21), and alleged complaints by Brown's team members to Felrice that Brown had not properly trained them. (*Id.* at 24). Brown made other allegations that McNutt had essentially tried to sabotage her success at Optum. In an October 13, 2014 e-mail from Brown to Felrice she wrote that McNutt was "doing all she can do undermine [her] leadership" and stated that she intended to file a grievance with Human Resources. (*Id.*). A week later, Brown, Felrice, and McNutt met to address Brown's concerns about McNutt. After this meeting, Brown allegedly gathered her team members and asked which one had reported her to McNutt and Felrice. (Doc. #49 at 12). Felrice subsequently verbally reprimanded Brown for this alleged behavior. (*Id.*).

Although Brown alleges that when she first raised her concerns about McNutt with Felrice in August 2014, she was satisfied with his response (Doc. #51 at 23-24), she was dissatisfied with Felrice's handling of the October 20, 2014 meeting. Shortly thereafter, Brown brought her concerns to Tanya Hughes in Human Resources, alleging that she had been treated differently on account of her race. (*Id.* at 26-27). Brown complained to Hughes again on October 27, 2014, but claims Hughes "appeared to dismiss [her] concerns." (*Id.* at 26-27).

---

[2] Brown attempts to minimize the impact of this admission by labeling the untrue statement in her application as "puffery" which "was also not entirely untrue, as Dr. Uddyback did replace [Brown's] former supervisor, Dr. Reginald Eadie, [] and then [she] was let go." (*Id.*).

On October 28, 2014, Brown attempted to log in to her computer, but the screen indicated that she was denied. (Doc. #51-2 at 40). Brown inferred from her understanding of company policy that either Felrice or McNutt had deprived her of computer access. (*Id.* at 43). Feeling that her superiors "made it impossible for [her] to do [her] job," and "made [her] useless as a leader," Brown resigned the same day. (Doc. #51 at 39). Brown has since attempted to be re-hired by Optum. When she applies, however, she allegedly receives two messages from the online application system: one stating that she meets the qualifications for the position, and a subsequent message stating that she is no longer under consideration. (Doc. #49-2 at 26). Brown alleges that she has been marked as "no hire," though Optum denies that it has taken any such action. (Doc. #51 at 16).

On July 28, 2015, Brown filed a Charge of Discrimination with the Michigan Department of Civil Rights alleging race discrimination and retaliation in violation of Title VII. (*Id.* at 28). The EEOC first responded to Brown's Charge of Discrimination on October 7, 2015 with a letter addressing Brown's claims. (*Id.* at 29). After deciding not to proceed with her claims, the EEOC sent Brown a right-to-sue ("RTS") letter, which is dated November 17, 2015. (*Id.* at 19). Brown admits that she received the RTS letter on November 19, 2015. (Doc. #1 at 2, ¶ 8). On February 19, 2016, ninety-two days after receiving the RTS letter, Brown filed her instant complaint alleging that she was constructively discharged because of her race and in retaliation for complaints she voiced, in violation of Title VII. (Doc. #1 at 2). Brown also asserts in her complaint that the challenged conduct violated the ELCRA and constituted "[d]efamation of [her] professional character, libel and slander." (Doc. #1 at 2). Optum now moves for summary judgment. (Doc. #49).

## B. Standard of Review

Summary judgment is proper if the moving party shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A dispute is "genuine" if a reasonable jury could return a verdict in favor of the nonmoving party, and a fact is "material" if it has the potential to affect the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Viewing the evidence in a light most favorable to the nonmoving party, the Court's task is to determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." (*Id.* at 251-52).

The party seeking summary judgment bears the initial burden of informing the Court of the basis for its motion, and must identify particular portions of the record that demonstrate the absence of a genuine dispute as to any material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986); *Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir. 2009). Once this occurs, the nonmoving party must counter with specific facts upon which a reasonable jury could find in its favor. *Vereecke v. Huron Valley Sch. Dist.*, 609 F.3d 392, 399 (6th Cir. 2010) (citing *Anderson*, 477 U.S. at 252). A mere scintilla of proof or some metaphysical doubt as to a material fact is insufficient to forestall summary judgment. *Sierra Club v. ICG Hazard, LLC*, 781 F.3d 281, 284 (6th Cir. 2015).

## C. Analysis

The gravamen of Brown's complaint is that she was constructively discharged because of her race and in retaliation for complaints she voiced, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000 *et seq*. Optum argues that summary judgment in its favor is

appropriate as to those claims because they are time-barred.³ For the reasons set forth below, the Court agrees.

Brown's employment discrimination claims are barred because she did not file her instant complaint within 90 days after receiving the EEOC's RTS letter. One of the prerequisites to filing suit in federal court under Title VII of the Civil Rights Act of 1964 ("Title VII") is that the plaintiff must first file a charge of discrimination with the EEOC and must receive from the EEOC a notice of right to sue. *See* 42 U.S.C. §2000e-5; 42 U.S.C. §12117(a). The plaintiff then has 90 days from *receipt* of the RTS letter to file suit. *See* 42 U.S.C. §2000e-5(f)(1) ("If a charge filed with the Commission … is dismissed by the Commission … the Commission shall so notify the person aggrieved and within ninety days **after the giving of such notice** a civil action may be brought against the respondent named in the charge ….") (emphasis added); *Minor v. Northville Pub. Sch.*, 605 F. Supp. 1185, 89 (E.D. Mich. 1985). The law is clear that the 90-day filing period acts as a statute of limitations. *See, e.g., Austion v. City of Clarksville*, 244 F. App'x 639, 648 (6th Cir. 2007) ("Once the administrative agency notifies the plaintiff of the dismissal of the charge by issuing a right to sue letter, the plaintiff has 90 days to file a civil action."); *Gui v. Inkster Sch. Dists.*, No. 12-15654, 2013 WL 1282020, at *3 (E.D. Mich. Mar. 27, 2013) ("Any action not commenced within ninety days of receiving a right-to-sue notice will be time barred."); *Johnson v. Int'l Union*, No. 13-15221, 2014 WL 2931825, at *3 (E.D. Mich. Apr. 3, 2014), report and recommendation adopted sub nom. *Johnson v. Int'l Union (UAW) AFL-CIO*, No. 13-15221, 2014 WL 2931832 (E.D. Mich. June 30, 2014), aff'd (May 8, 2015)). In the

---

³ Additionally, Optum claims that Brown cannot establish a *prima facie* case of discrimination or retaliation and, even if she could do so, Optum has shown legitimate, nondiscriminatory reasons for its actions which Brown cannot show were pretextual. Because the Court is recommending dismissing Brown's employment discrimination claims on statute of limitations grounds, it declines to consider these additional arguments.

principal case on which Brown relies, *Graham-Humphreys v. Memphis Brooks Museum of Art, Inc.*, 209 F.3d 552, 557 (6th Cir. 2000), the Sixth Circuit notes that "[t]he federal courts have strictly enforced Title VII's ninety-day statutory limit."

Brown's RTS letter is dated November 17, 2015, and expressly advised her, "Your lawsuit **must be filed <u>WITHIN 90 DAYS</u> of your receipt of this notice**; or your right to sue based on this charge will be lost." (Doc. #1 at 9) (emphasis in original). Brown admits that she received the letter on November 19, 2015. (*Id.* at 2). Taking November 19, 2015, as the starting point for calculating the 90-day deadline, Brown was required to file her complaint by February 17, 2016. Because it is undisputed that Brown did not file her complaint until February 19, 2016[4] (Docs. #1 at 11; #51 at 19), two days after the 90-day filing deadline, her Title VII claims are time-barred.

Brown does not dispute that, if the November 19, 2015 receipt date is used as the starting point for calculating the 90-day filing deadline, her complaint was tardy. Rather, she argues that her "race discrimination and retaliation claims are not time barred because the 90-day limitations period does not start running until the fifth day following the EEOC's mailing of a Right to Sue letter." (Doc. #51 at 31; *see also id.* at 32 (asserting that "[t]he Sixth Circuit has held that the 90-

---

[4] Though Brown admits her complaint was not filed until February 19, 2016, she asserts that it "is dated February 17, 2016, [] and it appears that two-day delay occurred between when [Brown] delivered her Complaint to the Court (on February 17, 2016) and when it was recorded." (Doc. #51 at 31; *see also id.* at 29 ("it is unclear why there was a two-day delay in the actual filing being recorded as [Brown] hand-delivered the complaint.")). Brown's attempt to circumvent the filing deadline fails. Brown presents no evidence that she hand-delivered (or attempted to hand-deliver) her complaint to the Clerk's Office on February 17, 2016, and the Civil Cover Sheet, which accompanies a filed complaint, bears Brown's signature and is dated February 19, 2016. (Doc. #1 at 11). Finally, Brown cites no case law holding that her *pro se* status is a valid basis for excusing her from the 90-day filing deadline, and indeed, the law is to the contrary. *See Getachew v. Columbus City Sch.*, No. 11-861, 2012 U.S. Dist. LEXIS 30663, *7 (N.D. Ohio Mar. 8, 2012) (*pro se* status is insufficient grounds to qualify for equitable tolling).

7

day period does not start running until the fifth day after the Right to Sue letter was mailed." (citing *Graham-Humphreys*, 209 F.3d at 557-58)). Thus, Brown asks the Court to deem her to have received the RTS letter on November 22, 2015. Using that date as a starting point for the 90-day deadline, Brown's complaint, filed on February 19, 2016, would be timely filed.

While Brown's argument is not wholly without logic – Courts do, *in some circumstances*, apply a five-day presumptive receipt doctrine to determine when the 90-day limitations period begins to run – it ultimately lacks merit here because that doctrine does not apply when there is no dispute that the plaintiff *actually received* the EEOC's RTS letter within the five-day timeframe. As the court in *Greene v. Brennan*, 15-cv-12747, 2017 WL 3038256, at *6 (E.D. Mich. April 24, 2017) recently explained:

> As an initial matter, it seems logical that no presumption is needed where, as here, we have proof of actual delivery to the claimant's proper address, and therefore, constructive notice. Moreover, the Title VII case Plaintiff cites within her argument is *Graham-Humphreys*, wherein the court stated that "the deposit of a postal attempt-to-deliver advisory at the claimant's last known residential address of record within the five-day mailing interval ordinarily will constitute constructive receipt of the RTS notice by the claimant. This obviously does not bolster Plaintiff's position here. . . . Accordingly the Court should not presume that Plaintiff received the notice on the fifth day where there is evidence she had constructive notice on the first day.

*Id.* (internal citations omitted).

Here, Brown's argument is even weaker than the plaintiff in *Greene* because, rather than mere constructive notice, Brown admits that she actually received the RTS letter on November 19, 2015. *See also Peete v. American Standard Graphic*, 885 F.2d 331, 331-332 (6th Cir. 1989) (holding that filing a civil complaint 91 days after actually receiving an RTS letter violated 42 U.S.C. § 2000e-5(f)(1)); *Ongesii v. Gurusamy Inc.*, 15-00017, 2016 WL 829887, at *4 (D. Guam March 1, 2016) ("The three-day presumption would come into play if [the plaintiff]

acknowledged receipt of the letter but did not know or remember the date she received it. . .. [The plaintiff] knows the date, so the three day rule does not apply").

This interpretation is consistent with the plain language of 42 U.S.C. §2000e-5(f)(1), which provides that the 90-day limitations period begins to run "after the giving of [] notice" that the EEOC has dismissed the plaintiff's charge. The Sixth Circuit has determined that "giving of notice" is accomplished not on the date the EEOC mails the RTS letter, but when there is "actual *delivery* and receipt" of that letter by the plaintiff. *Graham-Humphreys*, 209 F.3d at 557 (emphasis in original). As the above case law make clear, where the *actual* receipt date is not in dispute there is no need for a *presumptive* receipt date. However, where a dispute regarding the receipt date exists – for instance where a plaintiff claims her RTS letter was "lost in the mail," the law imposes a presumptive receipt date of five days after mailing. This presumption can be overcome by a strong showing with concrete evidence, but if no presumption applied, it "would mean that any claimant could avoid the limitations period by simply asserting that the mail was delivered late." *Amadasu v. Comm'r of Soc. Sec.*, 06CV584, 2009 WL 1542772, at *7 (S.D. Ohio May 28, 2009). Accordingly, this rebuttable presumption does not expand the statutory 90-day limitations period for all would-be Title VII plaintiffs, but merely creates an outer presumptive notice boundary for plaintiffs who claim they did not timely receive actual notice. As the Honorable David M. Lawson held in overruling the plaintiff's objections in the *Greene* case, the "presumption will not overcome the delivery date established by the constructive notice rule." *Greene v. Brennan*, No. 15-12747, 2017 WL 3048903, at *6 (E.D. Mich. July 18, 2017). If the presumption does not overcome earlier "constructive notice," it clearly would not overcome earlier actual notice. Since Brown admits that she received the RTS letter on

November 19, 2015 – two days after the EEOC mailed it to her – she cannot benefit from a presumption that she received it five days after the mailing date.

The main case on which Brown relies, *Graham-Humphreys*, 209 F.3d 552, is entirely consistent with the foregoing analysis. For one, as noted above, the Sixth Circuit in that very case explained that "federal courts have strictly enforced Title VII's ninety-day statutory limit." *Graham-Humphreys*, 209 F.3d at 557. Such a strict application here clearly favors a finding that Brown's complaint was tardy. Moreover, the facts in *Graham-Humphreys* are easily distinguishable from the ones present here, as they involved a plaintiff who did not receive actual notice of an RTS letter until three weeks after its mailing due to her failure to retrieve it from the post office where it was being held for her. The plaintiff thus urged the court to start the 90-day period ***from the date she actually received the RTS letter***. The Sixth Circuit rejected that position, and instead used the five-day presumptive period as the starting point. Again, unlike the plaintiff in *Graham-Humphreys*, Brown admits that she received the RTS letter two days after its mailing date. Accordingly, the commencement date for the 90-day limitation period is known, and there is no need to presume a later date.

In sum, because Brown admits that she received the RTS letter on November 19, 2015, but did not file her complaint until 92 days later, on February 19, 2016, her Title VII race discrimination and retaliation claims are time-barred and should be dismissed.

## III. CONCLUSION

For the foregoing reasons, **IT IS RECOMMENDED** that Defendants' Motion for Summary Judgment (**Doc. #49**) be **GRANTED**. Brown's Title VII race discrimination and retaliation claims and her and defamation claim should be **DISMISSED WITH PREJUDICE**.

The Court should decline to exercise jurisdiction over any remaining state law claims, and any such claims should be **DISMISSED WITHOUT PREJUDICE**.

Dated: December 7, 2017  
Ann Arbor, Michigan

s/David R. Grand  
DAVID R. GRAND  
United States Magistrate Judge

### NOTICE REGARDING OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of HHS*, 932 F.2d 505, 508 (6th Cir.1991); *United States v. Walters*, 638 F.2d 947, 949–50 (6th Cir.1981). The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir.1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir.1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge. A party may respond to another party's objections within 14 days after being served with a copy. *See* Fed. R. Civ. P. 72(b)(2); 28 U.S.C. §636(b)(1). Any such response should be concise, and should address specifically, and in the same order raised, each issue presented in the objections.

## **CERTIFICATE OF SERVICE**

      The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on December 7, 2017.

                                                                                            s/Eddrey O. Butts

                                                                                            EDDREY O. BUTTS

                                                                                            Case Manager